Bockee, Senator.
The supreme court have assumed in this case that banking associations, formed under. the act of 1838, are corporations, upon the authority of the case of The Bank of Watertown v. The Trustees of the Village of Watertown, (1 Hill, 616.) That case is based upon Thomas v. Dakin, (22 Wend. Rep. 22,) in which the supreme court decided in favor of the constitutionality of this law, solely upon the ground that *505 it did not appear to them judicially to have been passed as a majority bill. Had that fact appeared, as it does in this case, by the pleadings, the court would have held the law to be unconstitutional. In the subsequent case of Warner v. Beers, (23 Wend. Rep. 103,) in.which the fact appeared on the record that the law was passed by a vote of less than two thirds, this court decided by resolution, 1st. That the legislature has power to pass such a law by a majority bill; and 2d. That these associations are not bodies politic and corporate within the spirit and meaning of the constitution.
The authority from which the supreme court have taken it for granted that these institutions are corporations, seems entirely to fail. So far from this court having sanctioned the doctrine of the supreme court in Thomas v. Dakin, they have, in the subsequent case of Warner v. Beers, established one if not two propositions exactly antagonistical to those of the supreme court. This court decided that these associations were lawfully created by the legislature, and that they are not bodies politic and corporate, within the spirit and meaning of the constitution; and I am unable to see how they can be moneyed corporations within the letter or the spirit of the act for the assessment and collection of taxes. These associations did not exist when the legislature passed the act subjecting moneyed corporations to the particular mode of assessment on their capital specified in the act. It is clear, therefore, that the legislature could not have had these associations in view in making the special provisions applicable to moneyed corporations liable to taxation on their capital. These special provisions in regard to taxation cannot be applicable to the associations commonly called free banks, unless it can be clearly and expressly shewn that they are corporations, within the purview and meaning of the act.
The words of the constitution prohibiting the creation of a corporation by less than a two-third vote, are as broad, explicit and comprehensive as any terms which could be used. Can there be any class of corporations which are not within the letter as well as the spirit and meaning of the constitution 1 The supreme ¿court declare that these associations are corporations, *506 and are constitutionally created under the act of 1838, which was passed as a majority bill. The learned judge who delivered the opinion of the court, professes that he is unable to comprehend how it can be that one class of corporations are within and another out of the constitution. I confess that I labor under the same disability. To my vision, perhaps obtuse, but in this instance not more so than that of the learned judge, it appears that the moment it is established that these institutions are corporations, it follows conclusively and irresistibly that they could not be constitutionally created by a bare majority of the legislature. I leave it to other minds, more clear sighted than mine, to discover how two propositions directly contradictory can both be true.
If we are to regard the previous decision of this court in Warner v. Bems, I think we cannot hold these associations to be corporations. If we disregard it, and decide'that they are corporations, I apprehend we shall strike a fatal blow at their constitutional existence. It is obvious that the legislature, by the act of 1838, did not intend to authorize the creation of corporations. ' These institutions are not so denominated in the act, nor were they so denominated in any of the progressive stages of the bill. The intention of the legislature is worthy of regard, and should be carried out, unless clearly conflicting with the provisions of the constitution. The primary object of the legislature was to authorize the business of banking by individuals, or by associations, on their complying with certain conditions. To carry out the purpose of the legislature, it was not necessary to create a corporation in disguise. Associations of individuals previous to the restraining act had been permitted to carry on the business of banking, without any charter of incorporation. A repeal of the restraining act was all that was necessary to throw open this business to every one who chose to engage in it. The legislature thought it better to modify the restraining act, by extending the banking privilege to such individuals and associations as should give what was thought adequate security to the public. They also conferred on the associations certain privileges calculated to facilitate the transaction of business. *507 This they might do without creating a corporation. We have been in the habit of identifying banks with corporations, but they are not necessarily connected. Banking is the business of everybody who chooses to undertake it, when not restrained by prohibitory laws. A corporation is defined to be an artificial person. In contemplation of law, it has an individual existence, separate and apart from that of the individuals who compose it. It is known and can act only in its corporate name. It has inherent powers incident to its corporate character, such as perpetual succession, a capacity to sue and be sued by its corporate name, to take by devise, to purchase lands when not limited or restrained by statute, and the .right to have a common seal. Primarily all these powers are essential and necessarily incident to the very existence of a corporation. They may be modified, limited and controlled by any special provisions which the legislative power may choose to adopt. It is not so with these associations. They have some privileges and attributes conferred upon them by the general act to authorize the business of banking, resembling those usually exercised by corporations; but they are such as are held in common with partnership associations, and may be exercised and conferred without creating a “body corporate and politic.”
These institutions differ from corporations in this respect, that the individuals composing the association act by an agency authorized and sanctioned by the law. A “ corporation or body politic” acts in its own person. The individuality of natural persons is merged in that new creation or entity called a corporation, which acts by certain laws peculiar to itself, and has powers and attributes springing from the nature of its existence, and not necessarily depending upon any express grant of the legislature. Corporations in England are created by prescription, by charter from the crown, or by act of parliament. The acts of incorporation passed by our legislature, which are numerous, usually contain both enabling and restraining provisions. I have examined many of the acts of incorporation which have been passed by our legislature, and have found none which do in terms create any exemption of the individuals from liabil *508 ity for the debts of the corporation. It cannot be denied that such exemption does exist, and it must necessarily result from the nature of the existence of a corporation, and must be considered one of its distinguishing attributes. Political communities, by virtue of their organization,' are “ bodies corporate and politic,” having the inherent powers and attributes which I have supposed to be the distinguishing characteristics of a corporation.
The sixth section of the act to authorize the business of banking provides that the individual property of the shareholders shall not be liable for the debts of the corporation. This provision has' been supposed to bring these banking associations nearest in affinity with corporations. The very provision, however, seems to me to present a very strongly marked line of demarcation by which they may be separated and distinguished. Strike out this section, and all the shareholders, I presume, would be liable as partners.' As members of a corporation they would not be liable, unless rendered so by some special provision in the charter.
I have no doubt that these institutions ought to be taxed on their capital in the same manner as incorporated banks. It is a case more proper for the interference of the legislature, however, than the judiciary. During the two last sessions of the legislature, I have introduced bills in the senate for taxing the free banks in the same manner as moneyed corporations. The passage of such bills was resisted, not upon the ground that these banks were moneyed corporations, already liable to be taxed on their capital, but on the ground that it would be unjust and inexpedient to make them so liable. I am not of that opinion. But believing that they are not corporations, I think they cannot be legally taxed as such until the legislature shall so provide.
I think the judgment of the supreme court is erroneous, and shall therefore vote to reverse it.
Senator Rhoades delivered an opinion in favor of reversing the judgment of the supreme court, concurring substantially in the reasons assigned.by Senator Bockee.
*509 Senator Sherman thought the cases in this court of Warner v. Beers, (23 Wend. 103,) and Purdy v. The People, (4 Hill, 384,) necessarily decided that the associations in question were not corporations, and on this ground he was in favor of reversing the judgment of the supreme court.
Senator Jones was also in favor of reversing the judgment of the supreme court, on the ground taken by Senator Sherman. He added, that if these associations were corporations, then he agreed with the supreme court as to the manner in which they should be taxed.
Porter, Senator.
The great point to be decided in this cause is, whether the associations formed under the act of 1838, entitled “ An act to authorize the business of banking,” are moneyed or stock corporations, within the meaning of the statute subjecting such corporations to taxation on their capital. As the act does not declare these institutions bodies corporate, but with studied precaution denominates them associations, we must look to the powers and attributes conferred on them, and compare them with the essential powers and attributes of corporations, to determine their true character. In my judgment, it is very immaterial what the legislature h as chosen to call these ban Icing institutions ; but courts should look into their charters, and ascertain the privileges conferred upon them and their shareholders, and then give them the appellation to which they are entitled.
It was said on the argument that this court had virtually decided the question now presented for consideration. That taking the case of Warner v. Beers, (23 Wend. 103,) and viewing it in connexion with that of Purdy v. The People, (4 Hill, 384,) this court had decided that all corporations were embraced within the constitutional prohibition; and that these institutions were not included, and were, therefore, not corporations. I cannot so understand those cases, nor do I believe that they have been thus regarded by the profession. Let us exam-, ine them a moment, and see precisely what they do decide. As *510 to the first, Warner v. Beers, there can be no dispute, for the decision is in the shape of a resolution, which is, that these associations are not bodies politic and corporate, within the spirit and meaning of the constitution. This, of itself, is far enough from deciding that they are not corporations; nor is it pretended that any such conclusion can be drawn from the opinions delivered, or the resolution adopted. That resolution implies that there may be corporations created by law, though the law should not be passed by a two-third vote. The chancellor came to the conclusion, after an.elaborate opinion, that these associations are corporations; and yet he concurred in the resolution. But it is alleged that, conceding this to be so, yet, as this court decided in Purdy v. The People that all corporations are within the constitutional prohibition, it follows necessarily that these institutions are not corporations. If such was the decision, then the argument would be clear. But that I cannot concede. The precise point or principle decided in a case does not always depend upon the general and often ungarded expressions used by judges. What they may say in the course of their reasoning which is not applicable or necessary to the decision of the point of the case, is not regarded as authority. And in attempting to ascertain what was decided in Purdy v. The People, it is not enough to quote the general expressions which any members of this court may have used; but the question in issue must be ascertained, and the decision of that question will show the law of the case. Now the only question presented to the court in that case was, whether a law altering the charter of the city of New-York was constitutionally passed; it not having been passed by a vote of two-thirds of the members of both houses. The discussion was very much confined to the question whether public corporations came within the restriction of that clause of the constitution then under consideration. This court decided that a municipal corporation was included ; and that the attempt to alter the charter without a two-third vote was, ineffectual, and the act therefore void. No other question was presented for decision, and no other point was decided. And the expressions used by the members of the court, in giv *511 ing their opinions in that case, that all corporations were included, meant no more than this, that public as well as private corporations were included. To give a more extended effect to the decision, would be violating one of the soundest rules of construction ever propounded by authority. . Hence it appears to me extremely obvious, that the extent of the two decisions is this, and no more, that these associations are not corporations within the spirit and meaning of the constitution, and that municipal corporations are embraced in the constitution. It is manifest that the question whether all corporations are embraced, has never been presented or discussed; and it will be soon enough to discuss and decide it when we are required to do so. In the meantime we have only to decide, in my judgment, whether these institutions are corporations within the tax law. If they are corporations, their capital should be taxed as corporate property; but if they are not, then the property of the shareholders will be taxable as individual property.
Nor do I deem it essential to inquire into the history of this law, with a view to ascertain more clearly the exact object the legislature had in view in its passage. Such an inquiry would doubtless be proper and expedient in any case where the construction of a statute was doubtful, or its application doubtful. But in this case, where its terms are plain, and the powers and attributes conferred on the associations to be formed under the law are clearly expressed, I do not perceive what can be gained from an intimate knowledge of its history.- Suppose it could be proved, by evidence not derived from the act itself, that the legislature intended so to frame this act, as to evade the constitutional inhibition, and yet give the associations to be formed under it all the essential powers of corporations. Would this court feel itself warranted in seeking to carry out the intention of the legislature, by declaring the institutions not corporations, when they must be satisfied that corporations had in fact been formed under the law ? On the contrary, I hold that in respect to the intention of the legislature, where the language of the act is explicit, the courts are bound to seek for it in the words of the act, and are not at liberty to suppose that they intended any thing different *512 from what their language imports. And if this court shall determine, that the act in question invests the associations formed under it with powers and attributes that do not belong to mere partnerships, but which properly belong to and constitute bodies corporate, then in my judgment we can pay no regard to arguments derived from its history, or from any supposed intention to authorize the creation of other than corporate associations. We must presume that the legislature intended to do what we shall decide they have done.
The question whether these institutions are corporations, has been so fully discussed by judges on former occasions, that I shall content myself with stating briefly some of the reasons why I think they are so. Judges and elementary writers are in general sufficiently agreed in their definitions of a corporation aggregate. A variety of language is used by different writers, but I discover no collision. A corporation may be said to be “ a collection of individuals united in one body, under such a grant of privileges as secures a succession of members without changing the identity of the body, and constitutes the members for the time being one artificial person, or legal being, capable of transacting some kind of business like a natural person.” This is the definition given by Mr. Justice Bronson, (1 Hill, 620,) and it appears to me to express the idea of a corporation as fully as any that I have met with. It is a being created by law, and entirely distinct from the individuals that compose it. So far as this being is concerned, and in respect to the connexion of the corporators with it, they have lost their individuality. As corpora-tors, they can only speak and act through the agency of this legal entity. As individuals, they have no power whatever, in respect to the control or management of the joint property. They can neither buy nor sell, contract debts, nor pay them; but their existence is completely merged. This artificial person is as fully recognized in law as any natural person; and its powers, privileges, attributes and obligations are as well defined, and may be as freely and independently exercised, while acting within the limits of its prerogatives, as those of any individual. It transacts, in its corporate capacity, all the business appertain *513 ing to the objects of its creation, and is the only person known in respect to any of its business. The individuals composing the corporation incur no liability by reason of its acts or contracts, but that devolves solely upon the corporation itself. Nor does their bankruptcy, death or insanity in any manner affect this artificial being. It is as completely separated from all connexion with natural persons, in law and in fact, as is one individual from another.
Without quoting from the numerous writers who have mentioned the various incidents, powers, attributes, or constituents of a corporation, I will content myself on this point with selecting from the opinion of Chief Justice Nelson in Thomas v. Dakin, (22 Wend. 71,) the following summary: “ We may in short,” he observes, “ conclude by saying, with the most approved authorities at this day, that the essence of a corporation consists in a capacity 1. To have perpetual succession under a special name, and in an artificial form; 2. .To take and grant property, contract obligations, sue and be sued by its corporate name as an individual; and 3. To receive and enjoy in common, grants of privileges and immunities.” This is taken substantially from the commentaries of Chancellor Kent, and gives, in a clear manner, a condensed view of the powers and attributes of a corporation.
It is conceded that these associations are technically either corporations or partnerships; for all bodies of individuals acting in an associated or collective capacity, must fall under one or the other of these denominations. I have attempted to give a description of a corporation ; and will now consider what a partnership is, in its most enlarged and comprehensive form. ;A partnership, as defined by Collyer, “ is a voluntary contract between two or more persons, for joining together their money, goods, labor and skill, or any or all of them, under an understanding that there shall be a communion of profit between them, and for the purpose of carrying on a legal trade, business or adventure.” (Collyer On Partn. 2.) This association preserves to the partners their individuality; and though the rights and powers of the individuals may be limited and shaped by the contract they may enter into between themselves, yet there are, *514 and must be, from the very nature of the case, privileges and liabilities that attach to the individuals which no contract can remove. Corporations and partnerships may in many respects be made to assimilate; but there are certainly some characteristics which are distinctive, and which mark clearly the line to be drawn between them.
Take for instance the interest that a partner has in partnership property, which all the authorities concur in saying is that of a joint tenant, divested however of the right of survivorship. The title to all the partnership property vests in the partners as individuals, and on the death of one partner, the portion which he held descends to his personal representatives, subject, however, to the payment of partnership debts. But how is it with the title to corporate- property ? Does it vest in the shareholders? Certainly not. It belongs exclusively tq the corporation as such. The scrip or othér evidences which are held by the shareholders, evincing their rights and .interests in the common fund, are issued by this artificial being to show their claims to portions of the annual income from the fund, and their several shares in the final distribution when this being shall cease to exist. The death of a shareholder will not entitle his representatives to withdraw his portion of this fund, but Simply vests the title to the scrip or other evidence of stock in his representatives, and that portion of the fund is still held by the corporation, during its existence, unless the charter is altered by the power that created it.
. Again, it is a peculiar attribute of a corporation, that it is capable of perpetual succession, by which is meant, I suppose, that it is capable of an indefinite duration; its actual life depending upon the terms of its charter. Here again we have an entire separation of the artificial person, from any connexion that shows dependence upon the stockholders. Though the associates all die, one after another, the corporate being is the same in all respects. It has been likened to a river, the particles that compose which are ever changing, but which still remains the same river, and will, until the laws of nature in respect to it are changed. So a corporation will run down the course of *515 time, unaffected by the changes that take place among the stockholders, and will continue the same, until the law that created it shall decree its demise. Is a partnership capable of such continuity of being, by means of any contract which the original associates may make ? Can any number of associates contribute to a partnership fund, and bind themselves by contract that the same fund shall not be withdrawn from their partnership business, for any given time, and by any stipulations enable the firm to preserve its entirety1? Death and bankruptcy among stockholders are not regarded by corporations; nor do they occasion the least alteration in the being, powers, faculties, or other essential constituents of its being, or affect in any manner the integrity of the capital stock. Individual rights in it may pass from hand to hand, but they cannot be withdrawn. They are held, during the prescribed life of the artificial person, beyond the reach of human power; unless it shall have forfeited its being by violating some of the original conditions of its existence. But is this the case with partnerships? A man can make no legal contract by which his property may be put beyond the reach of creditors. In partnerships, the individuality of each partner is personal, and hence the property of each in the common fund may be reached, and the whole swept away, and the partnership annihilated. And if partners may, by agreement, make their shares transferable, that does not affect the argument; for the individual ownership continues, and the same results must follow. It is not so, however, with corporations. A creditor of a stockholder may reach his interest and appropriate its avails to the payment of his debts; but he can abstract nothing from the fund, for that belongs to one who is not his debtor. By the aid of the law he can have, in payment of his debt, that which represents the property of his debtor, and enjoy the avails of it, equally valuable probably with the portion of the fund contributed by his debtor; but the fund itself is committed to the hands of another, and held under a charter from the sovereign power.
These instances illustrate in my view, the broad, palpable and characteristic differences between corporations and partnerships, *516 The argument might perhaps be strengthened by an examination of some of the other essential attributes of a corporation.' which are not possessed or enjoyed by partnerships. But the subject has been so fully and elaborately discussed by learned judges, and my time is so limited, that I forbear to pursue it any further.
Having thus, as I think, shown some of the distinguishing characteristics that mark the difference between corporations and partnerships, it becomes necessary to examine the law under which these institutions were brought into being, that we may determine their character. Whenever the' legislature declare an association of individuals a body' politic and corporate, it becomes invested, ex vi termini, with certain well defined powers and faculties, which are essential to its being and business. But when the legislature shall pursue the inverse order, by passing a law authorizing associations for banking purposes to be formed, and giving to those associations all the essential powers and capacities of corporations, without naming them as such, it is very difficult for me judicially to see that they did not intend to create and have not created corporations! By the 15th section of the act in question, any number of persons are authorized to associate, for the purpose of establishing offices of discount, deposit and circulation ; and by the 16th section, they are required to make and file a certificate, specifying 1. The name of the association, which is to be used in all its dealings; 2. The place of its business; 3. The amount of its capital stock and number of shares; 4. The names of the shareholders, and the number of shares held by each; and 5. The time when the association shall commence and terminate its existence. Here we have the basis of a partnership, or of a corporation, to be very easily moulded into the one or the other, according to the further pro-, visions of the law. The 18th section gives these associations full banking powers, and authorizes them to choose all necessary agents and officers; and, after specifying the powers generally in use, lest any others should be needed for their purposes, it authorizes the association, not the associates, to “ exercise such incidental powers as shall be necessary to carry on the business *517 of banking.” The 19th section declares the shares to be personal property, and makes them transferable on the books of the association, vesting the purchaser with all the rights, and subjecting him to all the liabilities of the seller; and it then provides that the association shall not be dissolved by the death or insanity of any of the shareholders. Here we have a plain and manifest corporate feature. The institution may be formed for a hundred or a thousand years, and the law creating it declares that the death or insanity of any, or any number of the shareholders shall not affect its existence. Can a partnership be thus formed, that shall, by" the mere force and effect of its original articles of association, secure to itself beyond a peradventure such lengthened duration? I think not. It seems to me to be a plain provision separating the artificial creation of the statute, from the persons of the shareholders, and showing that in this respect the association is not a partnership. The 21st section requires that all contracts made by the association shall be signed by the president and cashier, and authorizes suits to be brought in his name ; and it provides that his death or removal is not to affect the" suit, but that all his powers, rights and duties in respect to it, shall devolve upon his successor. The same provision is made in the 22d section, as to suits against such associations; which also provides that judgments against the president for any debt or liability of the association, shall be enforced only against the property of the association. The 23d section exempts the shareholders from individual liability for any contract, debt or engagement of the association.
In all these provisions I discover no regard paid to the individual shareholders as partners, except to exempt them from. ■personal liability; but associations are created, with the right of continuance for such periods as the shareholders may determine, and with all the powers, privileges and attributes which are claimed to be essential to that artificial person called a corporation. The shareholders possess all the immunities belonging to ordinary stockholders of a corporation, and are deprived in the same manner of all interference with the contracts and business of such institutions. Iam of the opinion that they are corporations.
*518 Counsel have, seen fit to urge upon the court the magnitude of the consequences that may follow from a decision adjudging that these institutions are corporations. But with those consequences we have nothing to do. It has been the voluntary choice of these institutions to bring the question here. They have courted the controversy, and have preferred to abide by the result. It may be that prudence would have dictated the payment of the tax, rather than to have asked a decision. Such payment could have wronged no one.
The other question in this case, that is, whether these institutions derive an income or profit from their capital, or otherwise, and are in that respect within the tax law, has not been pressed on the argument; and I am not certain that the institutions place any reliance upon it. But as it is presented in the points, I will merely say, that I concur fully in the view taken of it in the opinion of the supreme court delivered by Mr. Justice Bronson.
I think the judgment of the supreme court should be affirmed.
Senators Johnson, Lester and Scott were also in favor of affirming the judgment of the supreme court, concurring substantially in the reasons assigned by Senator Porter.
On the question being put, “ Shall this judgment be reversed ?” the members of the court voted as follows:
For affirmance: Senators Bartlit, - Corning, Johnson, Lawrence, Lester, Mitchell, Porter, Scott, Scovil, Smith and Varney—11.
For reversal: Senators Backus, Bockee, Jones, Platt, Rhoades, Sherman, Varían and Works—8. •
Judgment affirmed.(a)

 See this case reviewed and commented on by the Chancellor and Senator Hand in Gifford v. Livingston, (3 Denio, 380;) and by Chief Justice Bronson in De Bow v. The People, (1 Denio, 9.)